IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KUSHAL K. SHAH, a/k/a Gerron Maurice Lindsey, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civ. No. 11-1182-SLR ) |
| CARL DANBERG, et al., | ) ) ) |
| Defendants. | ) |

Kushal K. Shah, a/k/a Gerron Maurice Lindsey. James T. Vaughn Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

**MEMORANDUM OPINION**

Dated: April 4, 2012
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Kushal Kalpan Shah a/k/a Gerron Maurice Lindsey ("plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, who proceeds pro se and has been granted in forma pauperis status, filed a complaint pursuant to 42 U.S.C. § 1983.[1] (D.I. 1) The court proceeds to screen the case pursuant to 28 U.S.C. § 1915 and § 1915A and will rule on plaintiff's pending motions. For the following reasons, the court will: (1) dismiss all claims, with the exception of the claim challenging the constitutionality of 11 Del. C. § 408 as applied, against Carl C. Danberg in his official capacity; (2) give plaintiff leave to amend; (3) deny plaintiff's motions for injunctive relief; and (4) grant plaintiff's request for counsel.

## II. BACKGROUND

In April 2002, plaintiff pled guilty but mentally ill to one count of first degree murder. *Shah v. State*, 29 A.3d 246 (Del. 2011) (table decision). In exchange for his guilty plea, the State agreed not to seek the death penalty and dismissed eleven criminal charges pending against plaintiff. *Id.* After the Superior Court of the State of Delaware ("Superior Court") denied his motion to withdraw his guilty plea on May 22, 2002, an evidentiary hearing was held on June 27, 2002, and the court found that plaintiff was mentally ill during the offense. (*See Lindsey v. State of Delaware*, Civ. No. 05-164-SLR at D.I. 1, ex. A) Plaintiff was sentenced to life imprisonment. *Shah*, 29 A.3d at 246. Since then, plaintiff has filed, unsuccessfully, seven motions for

---

[1]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

postconviction relief, a motion for reduction of sentence, and a motion for habeas corpus relief. *See Shah v. State*, 2012 WL 582306 (Del. Feb. 23, 2012) (table decision); *Shah*, 29 A.3d 246.

In his motion for correction of sentence, plaintiff asserted that his sentence is illegal because he should be housed at the Delaware Psychiatric Center ("DPC") and not at the VCC. *Shah*, 29 A.3d 246. He asserted in his sixth motion for postconviction relief that he was denied adequate psychiatric treatment following his conviction and sentence, as required by 11 Del. C. § 408.[2] (D.I. 1, ex. D) The issue was adjudicated by the Superior Court of the State of Delaware in and for New Castle County on July 30, 2010, wherein it held that plaintiff was "legally in custody pursuant to 11 Del. C. § 408." (*Id.* at ex. C, D)

## III. STANDARD OF REVIEW

This court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*,

---

[2]The guilty but mentally ill sentencing statute, 11 Del. C. § 408, establishes "mechanisms for sentencing, treating, and imprisoning persons who have been found 'guilty but mentally ill'". *Sanders v. State*, 585 A.2d 117, 127 (Del. 1990).

2

551 U.S. 89, 93 (2007). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)(applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*,

3

550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949. When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiff has a "plausible claim for relief."[3] *Id.* at 211. In other words, the complaint must do more than allege plaintiff's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV. DISCUSSION

Plaintiff alleges that subsequent to sentencing, he has been incarcerated at the VCC without receiving his statutory right to treatment pursuant to 11 Del. C. § 408(b) in violation of his Eighth and Fourteenth Amendment rights to the United States Constitution. Plaintiff alleges that he has suffered mental breakdowns throughout his

---

[3] A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

4

incarceration and has been placed on suicide watch at least twenty times. He complains that, throughout his incarceration, his mental health care has been negligible.

Section 408(b) provides in relevant part:

> In a trial under this section a defendant found guilty but mentally ill, or whose plea to that effect is accepted, may have any sentence imposed which may lawfully be imposed upon any defendant for the same offense. Such defendant shall be committed into the custody of the Department of Correction, and shall undergo such further evaluation and be given such immediate and temporary treatment as is psychiatrically indicated. The Commissioner shall retain exclusive jurisdiction over such person in all matters relating to security. The Commissioner shall thereupon confine such person in the Delaware Psychiatric Center, or other suitable place for the residential treatment of criminally mentally ill individuals under the age of 18 who have been found nonamenable to the processes of Family Court. Although such person shall remain under the jurisdiction of the Department of Correction, decisions directly related to treatment for the mental illness for individuals placed at the Delaware Psychiatric Center, shall be the joint responsibility of the Director of the Division of Substance Abuse and Mental Health and those persons at the Delaware Psychiatric Center who are directly responsible for such treatment. The Delaware Psychiatric Center, or any other residential treatment facility to which the defendant is committed by the Commissioner, shall have the authority to discharge the defendant from the facility and return the defendant to the physical custody of the Commissioner whenever the facility believes that such a discharge is in the best interests of the defendant.

11 Del. C. § 408(b).

Plaintiff alleges that in 2005, defendant Superior Court Judge Mary Miller Johnston ("Judge Johnston") received a letter regarding plaintiff's mental health and she forwarded the letter to defendant former VCC warden Thomas Carroll ("Carroll"), who took no action.[4] In July 2010, Judge Johnston denied plaintiff's motion for habeas

---

[4]Carroll served as the warden at the VCC (then known as the Delaware Correctional Center) from 2001 until September 2007. See http://doc.delaware.gov/news2007.shtml.

corpus relief wherein he sought placement at the DPC for treatment in accordance with 11 Del. C. § 408(b). In October 2010, Judge Johnston denied plaintiff postconviction relief wherein he complained that he was never placed at the DPC for treatment and that he wished to withdraw his plea. In June 2011, Judge Johnston denied plaintiff's motion for sentence of correction raising the same issue.

Count one is raised against all defendants[5] and alleges violations of the Eighth Amendment right to be free of cruel and unusual punishment by depriving plaintiff of his statutory right to treatment at the DPC from June 2002 to date, pursuant to 11 Del. C. § 408(b), and by acting with deliberate indifference to his mental health needs. Count two is raised against all defendants and alleges violations of plaintiff's Fourteenth Amendment right to due process by continuously keeping plaintiff from receiving treatment at the DPC. Plaintiff alleges the deprivation resulted in no treatment and he was not stabilized as § 408(b) mandates. He also alleges that § 408 is unconstitutional as applied to him. Finally, he alleges that Judge Johnston violated his right to due process when she failed to appropriately apply § 408 after he brought the deprivations to her attention by motions, failed to order his transfer to the DPC, and failed to nullify his plea after he was deprived of the benefits of § 408.

---

[5]Also named as defendants are Carl Danberg ("Danberg"), current Commissioner of the Delaware Department of Correction ("DOC"); Stan Taylor ("Taylor") Commissioner of the DOC from December 1995 through February 1, 2007, see http://doc.delaware.gov/Commissioner/ComPast.shtml; unnamed directors of the Division of Substance Abuse and Mental Health at the DPC between 2002 and 2011; and unnamed Medical Mental Health Directors and their companies who provided medical services at the VCC between 2002 and 2011.

Plaintiff seeks a finding that 11 Del. C. § 408 is unconstitutional as applied to him, as well as seeks compensatory and punitive damages. In addition, plaintiff has filed two motions for injunctive relief. Therein, he seeks an order requiring his placement at the DPC. (D.I. 3, 7) Finally, plaintiff requests counsel. (D.I. 9)

### A. Personal Involvement/Respondeat Superior

The complaint provides descriptions of Danberg, Taylor, and the unnamed directors in the "parties" section, but they are not mentioned in the "factual allegations" section of the complaint. In the "causes of action" section of the complaint, plaintiff alleges in a conclusory manner that defendants violated his rights under the Eighth and Fourteenth Amendments.

It may be that Danberg, Taylor, and the unnamed directors are named as defendants based upon their supervisory positions. As is well established, supervisory liability cannot be imposed under § 1983 on a respondeat superior theory.[6] *See Iqbal*, 129 S.Ct. 1937; *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d

---

[6]In *Iqbal*, the plaintiff alleged supervisory officials violated his rights because one official was the "principal architect" of the policy, and another was "implemental" in adoption and execution of the policy. *See id.* at 1944. The Supreme Court found the allegations facially insufficient. *See Iqbal*, 129 S.Ct. at 1949 (quoting *Robertson v. Sichel*, 127 U.S. 507, 515-516 (1888), for the proposition that "[a] public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").

7

Cir. 1988). Purpose rather than knowledge is required to impose liability on an official charged with violations arising from his or her superintendent responsibilities.[7] *Iqbal*, 29 S.Ct. at 1949. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

In the present case, plaintiff fails to associate his allegations with Danberg, Taylor, or the directors. Indeed, the complaint contains no allegations against these defendants, provides no facts to support a claim against them, and the claims are facially insufficient. As a result, the claims lack an arguable basis in law or in fact and will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**B. Judicial Immunity**

Plaintiff alleges that Judge Johnston violated his constitutional rights when she ruled against him and failed to appropriately apply 11 Del. C. § 408. Judge Johnston is immune from suit. "A judicial officer in the performance of [her] duties has absolute immunity from suit and will not be liable for [her] judicial acts." *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)). "A judge will not be deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of h[er] authority; rather, [s]he will be subject to liability only when [s]he has acted 'in the clear absence of all jurisdiction.'". *Id.* (citations omitted). Here, there are no allegations that Judge Johnston acted outside the scope of her judicial capacity, or in the absence

---

[7]In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official. *See Bayer v. Monroe Cnty. Children and Youth Services*, 577 F.3d 186, 190 n.5 (3d Cir. 2009)

8

of jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). The claims against Judge Johnston lack an arguable basis in law or in fact and will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### C. Statute of Limitations

Plaintiff filed his complaint on November 24, 2011, and complains of acts occurring from 2002 to date.[8] Plaintiff alleges that Carroll took no action on a letter forwarded to him in 2005 that discussed plaintiff's mental health condition. He also names former DOC commissioner Taylor as a defendant. Taylor has not been the DOC commissioner since February 2007. In addition, Carroll has not been the warden at the VCC since September 2007.

For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 275 (1983). In Delaware, § 1983 claims are subject to a two-year limitations period. *See* 10 Del. C. § 8119; *Johnson v. Cullen*, 925 F.Supp. 244, 248 (D. Del. 1996). Section 1983 claims accrue

---

[8]The computation of time for complaints filed by pro se inmates is determined according to the "mailbox rule." In *Houston v. Lack*, 487 U.S. 266 (1988), the United States Supreme Court held that a prisoner's notice of appeal of a habeas corpus petition was deemed filed as of the date it was delivered to prison officials for mailing to the court. While *Houston* dealt specifically with the filing of a habeas appeal, the decision has been extended by the Court of Appeals for the Third Circuit to other prisoner filings. *See Burns v. Morton*, 134 F.3d 109, 112 (3d Cir. 1998). Additionally, this district has extended the *Houston* mailbox rule to pro se § 1983 complaints. *Gibbs v. Decker*, 234 F. Supp. 2d 458, 463 (D. Del. 2002). Here, Plaintiff's complaint was signed on November 24, 2011, and the envelope it was mailed in is post-marked November 28, 2011. Therefore, plaintiff's complaint was delivered to prison authorities for mailing by at least November 24, 2011. The court concludes that plaintiff's complaint was filed on November 24, 2011, the date it was signed, and the earliest date possible that it could have been delivered to prison officials in Delaware for mailing.

"when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

The statute of limitations is an affirmative defense that generally must be raised by the defendant, and is waived if not properly raised. *See Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 n.14 (3d Cir. 2006); *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1167 (3d Cir. 1986). "[W]here the statute of limitations defense is obvious from the face of the complaint and no development of the factual record is required to determine whether dismissal is appropriate, *sua sponte* dismissal under 28 U.S.C. § 1915 is permissible." *Davis v. Gauby*, 408 F. App'x 524, 526 (3d Cir. 2010) (not published) (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)).

The complaint alleges that Carroll took no action on a letter received by him in 2005 and names Taylor and Carroll as defendants despite the fact that they have not held the positions of commissioner and warden, respectively, since 2007. The claims accruing prior to November 24, 2009 are barred by the two year limitations period, and it is evident from the face of the complaint that the claims against these defendants are time-barred.

Moreover, the continuing violation theory does not save plaintiff's claims. The continuing violation doctrine is most frequently applied in employment discrimination claims, but it also may be used to bring a § 1983 claim. *Cowell v. Powell Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (citations omitted). It is a narrow and equitable exception and "should not provide a means for relieving plaintiff[] from [his] duty to exercise reasonable diligence in pursuing [his] claims." *Cowell*, 263 F.3d at 295 (citations

10

omitted). "[I]f prior events should have alerted a reasonable person to act at that time, the continuing violation theory will not overcome the relevant statute of limitations." *King v. Township of East Lampeter*, 17 F. Supp. 2d 394, 416 (E.D. Pa. 1998), *aff'd*, 182 F.3d 903 (3d Cir. 1999).

Under the continuation violation theory, "[w]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time-barred." *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991) (citation omitted. Plaintiff must show that the defendants' conduct is "more than the occurrence of isolated or sporadic acts." *Cowell*, 263 F.3d at 292 (quotation omitted). The court must consider subject matter, frequency, and the degree of permanence, as follows: (1) whether the violations constitute the same type of [harm], tending to connect them in a continuing violation; (2) whether the acts are recurring or more in the nature of isolated incidents; and (3) whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. The degree of permanence consideration is the most important of the factors. *Id.*

Plaintiff was aware upon his sentencing (June 27, 2002) that § 408 provided for housing at the DPC until hospital staff determined that confinement in a correctional institution would be in plaintiff's best interest, yet he did not file his complaint until some nine years later. In examining the degree of permanence consideration which should

11

trigger plaintiff's awareness of a duty to assert his rights, the court considers the policy behind the statute of limitations and whether allowing plaintiff to postpone raising his claims against Carroll and Taylor until the statute of limitation had run would violate the fundamental policy rationale behind the statute of limitation. See Cowell, 263 F.3d at 295 ("[T]he continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims . . . Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights.")

Plaintiff failed to file his § 1983 lawsuit based on constitutional violations against Carroll and Thomas until long after the available time period when he was required to do so. The length of his incarceration alone has a degree of permanence such that plaintiff's awareness of the need to assert his rights should have been triggered. Notably, by reason of plaintiff's numerous filings in the Delaware State Courts raising the same or similar issues (albeit under postconviction relief theories), it cannot be said that plaintiff was oblivious of the need to assert his rights. Accordingly, he may not resurrect his claims against Carroll and Thomas as part of a continuing violation.

The court finds that plaintiff's claims against Carroll and Thomas are time-barred. Therefore, the court will dismiss the claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### D. 11 Del. C. § 408

Plaintiff alleges violations of his due process under the Fourteenth Amendment and violations of his right to be free from cruel and unusual punishment under the Eighth Amendment. His claims are predicated upon the alleged violation of the

procedures established under Delaware law governing the incarceration of individuals who are found guilty but mentally ill. See 11 Del. C. § 408. Liberally construed, the complaint alleges that defendants violated a state statute because they have housed him at the VCC and not at the DPC where he can receive treatment for mental illness.

Violations of state law, however, are insufficient to state a claim under § 1983. *Giuffre v. Bessell*, 31 F.3d 1241, 1257-58 (3d Cir. 1994); *Kulwicki v. Dawson*, 969 F.2d 1454, 1468 (3d Cir. 1992). Section 1983 provides a remedy for the deprivation of rights protected by federal rather than state law. See *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120-21 (1992); *see also Romero v. Fay*, 45 F.3d 1472, 1481 (10th Cir. 1995) (holding that an allegation that a defendant prosecuted the plaintiff in violation of New Mexico law was insufficient to allege a violation of federal law under § 1983). Moreover, the Supreme Court has held that "[t]he Constitution does not . . . guarantee that the convicted prisoner will be placed in any particular prison." *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). Thus, plaintiff's § 1983 claim fails to the extent that he claims defendants violated Delaware by confining him at the VCC rather than the DPC. Accordingly, said claim will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

Plaintiff also seeks declaratory relief that 11 Del. C. § 408 is unconstitutional as applied to him. Liberally construing the complaint, as the court must, plaintiff has asserted what appears to be a cognizable claim. Danberg, the DOC Commissioner, is named as a defendant in his official capacity. This is a permissible method of notifying the State of Delaware that a constitutional challenge to a state statute has been asserted and affords the State an opportunity to respond to the constitutional challenge.

See Fed. R. Civ. P. 5.1(a)(1)(B) (no separate notice of constitutional challenge is required where a state officer or employee, in his/her official capacity, is named as a party in the case). The claim against Danberg, in his official capacity, may proceed.

### D. Habeas Corpus

To the extent that plaintiff attempts to challenge his conviction and/or sentence, his sole federal remedy for challenging the fact or duration of his confinement is by way of habeas corpus. *Preiser v. Rodriguez,* 411 U.S. 475 (1973); *see also Torrence v. Thompson,* 435 F. App'x 56 (3d Cir. 2011) (not published). Furthermore, a plaintiff cannot recover under § 1983 for alleged wrongful incarceration unless he proves that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *See Heck v. Humphrey,* 512 U.S. 477, 487 (1994).

Here, plaintiff has not alleged or proven that his conviction or sentence was reversed or invalidated as provided by *Heck.* Indeed, he has been unsuccessful despite repeated attempts to obtain relief. To the extent plaintiff seeks damages for his current incarceration, his claim rests on an "inarguable legal conclusion" and is, therefore, frivolous. *Neitzke,* 490 U.S. at 326. Therefore, the court will dismiss the claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### E. Medical Needs

Plaintiff alleges in a conclusory manner, with no supportive facts, that he is not receiving adequate mental health treatment. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with

adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

Prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

The complaint, as it now stands, fails to provide sufficient facts to apprise defendants of their alleged acts and does not meet the pleading requirements of *Iqbal* and *Twombly*. Moreover, it seems that plaintiff has named certain defendants based upon their supervisory positions, despite the allegations that he has received some

15

mental health treatment. Even when reading the complaint in the most favorable light to plaintiff, he fails to state an actionable constitutional claim against defendants for deliberate indifference to a serious medical need.

Therefore, the medical needs claim is dismissed for failure to state a claim pursuant to pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). However, since it appears plausible that plaintiff may be able to articulate a claim against a defendant or name alternative defendants, he will be given an opportunity to amend the medical needs claim. See *O'Dell v. United States Gov't*, 256 F. App'x 444 (3d Cir. 2007) (not published) (leave to amend is proper where the plaintiff's claims do not appear "patently meritless and beyond all hope of redemption").

### F. Injunctive Relief

Plaintiff filed motions for injunctive relief for defendants to place him at the DPC consistent with 11 Del. C. § 408(b). (D.I. 3, 7) Plaintiff states that he is mentally unstable and has repeatedly caused himself physical injury during his suicide attempts. He states that he has been hospitalized in the prison's infirmary at least twenty times for suicide attempts.

A preliminary injunction is "an extraordinary remedy that should be granted only if (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) ("*NutraSweet II*"). The elements also apply to temporary restraining orders. See *NutriSweet Co. v. Vit-Mar Enterprises., Inc.*, 112 F.3d 689, 693 (3d Cir. 1997) ("*NutraSweet I*") (a temporary

16

restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions). "[F]ailure to establish any element in [a plaintiff's] favor renders a preliminary injunction inappropriate." *NutraSweet II*, 176 F.3d at 153. Furthermore, because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *Rush v. Correctional Med. Services, Inc.*, 287 F. App'x 142, 144 (3d Cir. 2008) (not published) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

Plaintiff wishes to receive mental health treatment at the DPC. Plaintiff submitted medical records to support his position that he should be transferred to the DPC, but they only date from 1991 to 2002. (D.I. 8) Plaintiff provides no support for his claim that, ten years after the date of the last medical record provided, his mental condition requires treatment at the DPC. In addition, the Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities they choose. *Walls v. Taylor*, 856 A.2d 1067, (Del. 2004) (table decision) (citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003). Furthermore, the United States Supreme Court has held that an inmate has no due process right to be incarcerated in a particular institution whether it be inside the state of conviction, or outside that state. *Olim v. Wakinekona*, 461 U.S. 238, 251(1983).

Plaintiff has neither demonstrated the likelihood of success on the merits, nor has he demonstrated irreparable harm to justify the issuance of immediate injunctive relief. Therefore, the motions for a preliminary injunctions will be denied. (D.I. 3, 7)

## G. Request for Counsel

Plaintiff requests counsel on the grounds that he cannot afford counsel, he is unable to locate and serve defendants, counsel is necessary to investigate his claims, the issues are complex, and the issues involve his mental health condition and mental health history. (D.I. 9)

A pro se litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel. See Ray v. Robinson, 640 F.2d 474, 477 (3d Cir. 1981); Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). It is within the court's discretion to seek representation by counsel for plaintiff, and this effort is made only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting . . . from [plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984); accord Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993) (representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law).

After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel, including:

> (1) the plaintiff's ability to present his or her own case;
> (2) the difficulty of the particular legal issues; (3) the degree
> to which factual investigation will be necessary and the ability
> of the plaintiff to pursue investigation; (4) the plaintiff's capacity
> to retain counsel on his own behalf; (5) the extent to which a
> case is likely to turn on credibility determinations; and
> (6) whether the case will require testimony from expert witnesses.

18

*Tabron*, 6 F.3d at 155-57; *accord Parham*, 126 F.3d at 457; *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).

Plaintiff appears pro se and is unable to afford legal representation. Given plaintiff's history of a mental health condition and the complexity in attacking the constitutionality of a State statute, the court determines that, under these circumstances, it is appropriate to encourage legal representation for plaintiff by an attorney. Accordingly, the court will grant the request for counsel. (D.I. 9)

## V. CONCLUSION

For the above reasons, all claims, with the exception of the claim challenging the constitutionality of 11 Del. C. § 408 as applied, against Danberg in his official capacity, will be dismissed as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Plaintiff will be given an opportunity to amend his pleading only as to the medical needs claim. The court will deny plaintiff's motions for injunctive relief (D.I. 3, 7) and will grant plaintiff's request for counsel (D.I. 9).

An appropriate order follows.