## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KUSHAL KALPAN SHAH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 11-1182-SLR |
| | ) |
| CARL DANBERG, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

At Wilmington this  5th  day of July, 2012, having considered plaintiff's letter

request for a preliminary injunction and the papers submitted in connection therewith;

IT IS ORDERED that the letter request (D.I. 15) is **denied**, for the reasons that

follow:

1. Plaintiff Kushal Kalpan Shah, a prisoner incarcerated at the James T. Vaughn

Correctional Center ("JTVCC"), Smyrna, Delaware, filed a complaint on November 29,

2011, pursuant to 42 U.S.C. § 1983.[1]  (D.I. 1)  On June 27, 2012, plaintiff[2] wrote a letter

requesting that the court order the Delaware Department of Correction to move him to a

_____

[1]Although plaintiff initiated this action pro se, his request for counsel was granted and the clerk of court was directed to attempt to refer representation of plaintiff to a member of the Federal Civil Panel on April 5, 2012. (D.I, 11, 12)  On June 8, 2012, the court recognized that Frederick L. Cottrell, III, Esquire and Chad M. Shandler, Esquire had agreed to represent plaintiff. (D.I. 13)

[2]Plaintiff filed this letter request without the assistance of counsel. (D.I. 15) While the court does not ordinarily entertain anything presented by a party without the assistance of his/her counsel of record, the unique urgency of the application at bar compelled the issuance of the order requesting a response by Warden Perry Phelps and the letter notifying plaintiff's counsel of his actions . (D.I. 15, 17)

different correctional facility.  (D.I. 15)  Plaintiff avers that on May 14, 2012, he warned correctional and medical staff ("staff") that he had the urge to hurt himself.  Plaintiff alleges that the staff ignored his warnings and, later that day, he cut open his arm in several places.  Plaintiff avers that the transfer is necessary to prevent him from committing suicide.

2.  In response, Warden Perry Phelps avers that plaintiff is classified to the Security Housing Unit ("SHU") at the JTVCC.  (D.I. 23)  The SHU is reserved for inmates whose behavior and history require maximum security housing.  An outline of the services provided to plaintiff by the prison mental health staff from May 1, 2012 through May 31, 2011, reflect a continuous course for treatment, including the administration of medication and examinations by mental health care professionals. (D.I. 25)  From May 14 through May 21, plaintiff received services on six occasions from mental health physicians and staff.  (Id. at ex. A)  After the self-inflicted wounds to his arm, plaintiff was placed in six point restraints and monitored for suicidal ideation.

3.  The disciplinary records submitted by Warden Phelps reveal that on May 14, 2012, plaintiff and another inmate (housed in an area close to plaintiff) had a verbal dispute that required the intervention of at least one correctional officer.  (Id. at ex. B) Later in the day, the dispute escalated when plaintiff charged at the other inmate and was forcibly restrained by correctional officers and placed in cuffs and shackles. Plaintiff was later found guilty of two conduct violations and sanctioned with 15 days of isolation.  A disciplinary report dated May 15, 2012, reflects that the self-inflicted wound to plaintiff's forearm was caused by piece of metal (busted zipper pull) and that his

2

mattress was covered with blood.  Plaintiff was found guilty of four violations and sentenced to a loss of privileges for 40 days.

4.  A preliminary injunction is "an extraordinary remedy that should be granted only if (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) ("*NutraSweet II*").  The elements also apply to temporary restraining orders. *See NutriSweet Co. v. Vit-Mar Enterprises., Inc.,* 112 F.3d 689, 693 (3d Cir. 1997) ("*NutraSweet I*") (a temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions). "[F]ailure to establish any element in [a plaintiff's] favor renders a preliminary injunction inappropriate." *NutraSweet II*, 176 F.3d at 153.  Furthermore, because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *Rush v. Correctional Med. Services, Inc.,* 287 F. App'x 142, 144 (3d Cir. 2008) (not published) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

5.  The records submitted by Warden Phleps indicate that plaintiff is receiving ongoing care and treatment and is being followed for his mental health issues.  These exhibits reflect that plaintiff has not demonstrated the likelihood of success on the merits.  There is no indication that, at the present time, plaintiff is in danger of suffering irreparable harm.  Plaintiff has neither demonstrated the likelihood of success on the

merits, nor has he demonstrated irreparable harm to justify the issuance of immediate injunctive relief.

United States District Judge

4